[Cite as *State v. Strong*, 2017-Ohio-859.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
HURON COUNTY

State of Ohio                                        Court of Appeals No. H-16-001

    Appellee                                     Trial Court No. CRI-2015-0680

v.

Kyle W. Strong                              **DECISION AND JUDGMENT**

    Appellant                                    Decided:  March 10, 2017

* * * * *

James J. Sitterly, Huron County Prosecuting Attorney, for appellee.

Sarah A. Nation, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellant, Kyle Strong, appeals the judgment of the Huron County Court of

Common Pleas, finding him guilty following a jury trial of one count of burglary, one

count of attempted burglary, one count of tampering with evidence, and one count of

theft from the elderly, and sentencing him to a combined prison term of 7 years and 11 months.[1]  For the reasons that follow, we affirm.

## I.  Facts and Procedural Background

{¶ 2} On October 16, 2015, the Huron County Grand Jury returned a four-count indictment, charging appellant with one count of burglary in violation of R.C. 2911.12(A)(1), a felony of the second degree, one count of attempted burglary in violation of R.C. 2923.02(A) and 2911.12(A)(2), a felony of the third degree, one count of tampering with evidence in violation of R.C. 2921.12(A)(1) and (B), a felony of the third degree, and one count of theft from the elderly in violation of R.C. 2913.02(A)(1) and (B)(3), a felony of the fifth degree.

{¶ 3} The matter proceeded to a two-day jury trial on the indicted charges beginning on December 16, 2015.  Prior to opening statements, the jury embarked on a jury view of the scene of the alleged crimes.  Neither anyone from the prosecution, nor appellant or his defense counsel accompanied the jury on the jury view.

{¶ 4} Thereafter, the testimony from the trial revealed the following.  In the morning hours of September 18, 2015, the Bellevue Police Department received a report of a burglary at 206 Elm Street.  Officers responded to a scene where the victim, a 74-year-old woman, described that she awoke to find two men inside her house.  The men

---

[1] Appellant's prison term was also ordered to be served consecutively to an 11-month prison term for violation of community control in case No. CRI-2013-0844, for a total prison term of 8 years and 10 months.

2.

asked her for her prescription medications, and also took loose change, jewelry, her cordless telephones, and a box of fudge pops from the freezer.

{¶ 5} Several police officers canvassed the surrounding area looking for the two men. Shortly thereafter, a couple of blocks away, Officer Frank Gleason noticed two men crowded together inside the screen door of 135 Gunther Street. Gleason testified that the two men were wearing masks. As Gleason approached, the two men went around the house where he observed them attempting to break into a window. Gleason ordered them to stop and get down on the ground. One of the men complied. The other fled the scene. Gleason testified that the person that fled was wearing a green baseball hat. At the scene, the officers recovered the loose change, the victim's jewelry, and the box of fudge pops, which were still partially frozen. The cordless telephones were later discovered in a trash can on the path between 206 Elm Street and 135 Gunther Street.

{¶ 6} The suspect who was apprehended was identified as Robert Gilbert. While he was in the back of the police cruiser, Gilbert was read his Miranda rights. Gilbert then responded that the other person with him was appellant. However, at trial, Gilbert testified that he was unsure of who was with him at the time of the break-ins. Gilbert did testify, though, that appellant was with him the night before, and they had done substantial amounts of drugs together.

{¶ 7} While searching the scene at 135 Gunther Street, officers found a green baseball hat lying on the ground in the path of where the second suspect fled. The hat was submitted for DNA analysis, and it was found to contain a single source of DNA,

3.

which was consistent with appellant's DNA profile. The expected frequency of that particular DNA profile is 1 in 315 quadrillion.

{¶ 8} Following the state's presentation of evidence, appellant moved for a Crim.R. 29 judgment of acquittal as to the count of attempted burglary based on the conduct at 135 Gunther Street. Appellant argued that there was no testimony from the homeowner that would establish that appellant was trespassing on the property. Instead, Gilbert testified that he knew the owner of the property, that the owner was a drug dealer, and that Gilbert had been there on several occasions. Further, appellant argued that there was no evidence to demonstrate that appellant had a purpose or intent to commit a crime at 135 Gunther Street. The trial court denied appellant's motion.

{¶ 9} Thereafter, the defense rested without calling any witnesses. The matter was then submitted to the jury, which returned with a verdict of guilty as to all counts.

## II. Assignment of Error

{¶ 10} Appellant has timely appealed his judgment of conviction, and now asserts three assignments of error for our review:

I. The trial court erred in denying appellant's Rule 29 motion to acquit.

II. The defendant's conviction is based upon insufficient evidence and his conviction is against the manifest weight of the evidence.

4.

III. Defense counsel's performance of his duties was deficient in that he made errors so serious that he failed to function as the counsel guaranteed by the Sixth Amendment and appellant was prejudiced by said errors.

### III. Analysis

{¶ 11} In his first assignment of error, appellant argues that the court erred when it denied his motion to acquit relative to the count of attempted burglary at 135 Gunther Street. We review a denial of a Crim.R. 29 motion to acquit under the same standard as the one for determining whether a verdict is supported by sufficient evidence. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37. In reviewing a record for sufficiency, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 12} Here, the elements of burglary provide that no person by force, stealth, or deception, shall * * * (2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense. R.C. 2911.12(A)(2).

{¶ 13} In his brief, appellant argues that there is no evidence that he was present at 135 Gunther Street, that he was trespassing on the property, or that his purpose was to commit a criminal offense. We disagree.

{¶ 14} As to his presence at 135 Gunther Street, the evidence consists of Gilbert's statements in the back of the police cruiser that identify appellant as the second burglar, as well as Gleason's testimony that the second burglar was wearing a green hat, and a green hat that was found on the property in the direction in which the second burglar fled contained a single DNA profile that matched appellant's DNA. From this, we conclude that a rational trier of fact could have found that appellant was the second burglar.

{¶ 15} As to whether appellant was trespassing on the property with the purpose to commit a criminal offense, the evidence shows that, in the morning hours, Gilbert and appellant were crouched together inside a screen door wearing dark clothing and masks. They then proceeded around the house and were seen by Gleason attempting to enter the house through a window. Nearby were the contents stolen from the victim at 206 Elm Street. When confronted by the officer, appellant fled.

{¶ 16} Appellant argues that there was no testimony from the owner of 135 Gunther Street that appellant did not have permission to be there. However, we find that a rational juror could reasonably infer that appellant did not have permission based on his conduct in trying to break in through a window. *See State v. Colon*, 8th Dist. Cuyahoga No. 61253, 1992 Ohio App. LEXIS 6320 (Dec. 17, 1992) (reasonable to infer that the

defendant did not have permission to be on the property where he was seen on the lower level wearing black gloves and removing stereo equipment).

{¶ 17} In addition, a rational juror could also infer from the circumstances that appellant intended to commit a criminal offense. "Criminal intent can be inferred from the presence, companionship and conduct of a criminal defendant both before and after the offense is committed." *State v. Weimer*, 2016-Ohio-3116, 66 N.E.3d 50, ¶ 51 (11th Dist.), citing *State v. Mootispaw*, 110 Ohio App.3d 566, 570, 674 N.E.2d 1222 (4th Dist.1996). Here, Gilbert and appellant had been doing drugs all night, they had just broken into another person's home looking for drugs, and Gilbert knew that the owner of 135 Gunther Street was a drug dealer. Thus, it is reasonable to infer that appellant was intending to steal drugs from 135 Gunther Street. Therefore, we hold that the trial court did not err in denying appellant's Crim.R. 29 motion because the evidence was sufficient to support a finding of guilty on the count of attempted burglary.

{¶ 18} Accordingly, appellant's first assignment of error is not well-taken.

{¶ 19} In his second assignment of error, appellant argues that his convictions on the other three counts were based on insufficient evidence and against the manifest weight of the evidence because the state failed to establish his identity. Specifically, appellant argues that the victim at 206 Elm Street could not identify either burglar, and did not recognize appellant at trial. Additionally, he notes that Gleason was unable to see the second burglar's face. Finally, appellant references Gilbert's inability at trial to remember who was with him during the burglary and attempted burglary.

7.

**{¶ 20}** Insufficiency and manifest weight are distinct legal theories. In contrast to the sufficiency standard articulated above, when reviewing a manifest weight claim,

> The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 220, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

**{¶ 21}** Here, we find that appellant's convictions are not based on insufficient evidence or against the manifest weight of the evidence. As we discussed in appellant's first assignment of error, appellant's identity is established through Gilbert's statements in the police cruiser that appellant was the other burglar, as well as through the DNA evidence from the green baseball hat that Gleason testified the second burglar was wearing. Therefore, we hold that a rational juror could have found that appellant was the second burglar, and we further hold that the jury did not lose its way and commit a manifest miscarriage of justice in so concluding that appellant was the second burglar.

**{¶ 22}** Accordingly, appellant's second assignment of error is not well-taken.

8.

**{¶ 23}** Finally, in his third assignment of error, appellant argues that he received ineffective assistance of counsel when his trial counsel failed to attend the jury view and waived appellant's presence at the view, and when counsel failed to call appellant to testify.

**{¶ 24}** To prevail on a claim of ineffective assistance, appellant must satisfy the two-prong test developed in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). That is, appellant must demonstrate that counsel's performance fell below an objective standard of reasonableness, and a reasonable probability exists that, but for counsel's error, the result of the proceedings would have been different. *Id.* at 687-688, 694. "The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* at 697.

**{¶ 25}** In arguing that counsel was ineffective for failing to attend the jury view and waiving appellant's presence at the view, appellant argues that he was prejudiced because counsel had "no opportunity to see what the jury and trier of fact viewed." "Prejudice is presumed when counsel is totally absent from a crucial stage of trial." *State v. Tyler*, 50 Ohio St.3d 24, 38, 553 N.E.2d 576 (1990). However, a jury view of a crime scene is not a crucial stage. *Id.*; *see also State v. Spaulding*, Slip Opinion No. 2016-Ohio-8126, ¶ 105 ("[A] jury's view of a crime scene is neither evidence nor a crucial stage in

the proceedings."). Further, appellant has not articulated any specific, actual prejudice that resulted from counsel's nonattendance. Therefore, we hold that appellant has failed to satisfy the second *Strickland* prong, and his claim of ineffective assistance on this basis is without merit.

{¶ 26} Turning to his claim of ineffective assistance based on appellant not being called to testify in his own defense, we note that "[t]he ultimate decision of whether a defendant will testify on his own behalf is the defendant's." *State v. Ryan*, 6th Dist. Wood No. WD-05-064, 2006-Ohio-5120, ¶ 24, citing *State v. Edwards*, 119 Ohio App.3d 106, 109, 694 N.E.2d 534 (10th Dist.1997). Furthermore, "[w]hether or not a defendant testifies is purely a tactical decision." *Id.* at ¶ 23, citing *State v. Bey*, 85 Ohio St.3d 487, 499, 709 N.E.2d 484 (1999). As such, "it cannot be challenged on appeal on the grounds of ineffective assistance of counsel, unless it is shown that the decision was the result of coercion." *Id.* Here, appellant does not allege, and the record does not demonstrate any coercion by his trial counsel to prevent him from testifying. Therefore, we hold that appellant has not demonstrated that counsel's performance fell below an objective standard of reasonableness, and thus his claim of ineffective assistance on this basis must fail.

{¶ 27} Accordingly, appellant's third assignment of error is without merit.

## IV. Conclusion

{¶ 28} For the foregoing reasons, we find that substantial justice has been done the party complaining, and the judgment of the Huron County Court of Common Pleas is affirmed.  Appellant is ordered to pay the costs of his appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Arlene Singer, J.

Thomas J. Osowik, J.
CONCUR.

_____
JUDGE

_____
JUDGE